# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

EDITH B. HEATH,             )
                                  )
               Plaintiff,       )
                                  )
v.                            )     No.  04-CV-620-SAJ
                                  )
JO ANNE B. BARNHART,      )
Commissioner of Social Security   )
Administration,             )
                                  )
               Defendant.   )

## OPINION AND ORDER[1/]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits.[2/]  Plaintiff asserts that the Commissioner erred because (1) the ALJ failed to properly document the file with regard to Claimant's mental condition, (2) the ALJ erred by formulating Claimant's Residual Functional Capacity assessment that failed to include all of Claimant's physical limitations, and (3) the ALJ made an improper credibility assessment.  For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision for further proceedings consistent with this Order.

## I. FACTUAL AND PROCEDURAL HISTORY

Claimant applied for disability benefits on January 22, 2003, alleging disability beginning March 8, 2002. [R. at 162].  Her application for benefits was denied in its entirety initially and on reconsideration.  A hearing before the ALJ was held on March 9, 2004.  By

---

[1/]  This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

[2/]  Administrative Law Judge Lantz McClain (hereafter "ALJ") concluded that Plaintiff was not disabled by decision dated April 30, 2004.  [R. at 15 - 24].  Plaintiff appealed the decision by the ALJ to the Appeals Council. The Appeals Council declined Plaintiff's request for review.  [R. at 6].

decision dated April 30, 2004, the ALJ found Claimant was not disabled.  On June 24, 2004, the Appeals Council denied Claimant's request for review.

Plaintiff completed a Disability Supplemental Interview Outline, which was received in the social security office on March 5, 2003.  [R. at 79].  Plaintiff wrote that she woke up at 5:30 a.m. and assisted in getting people in her household ready for work and school. [R. at 79].  Plaintiff indicated that she could not lift, had difficulty sitting, standing, bending, squatting, walking, and stooping, and had problems grasping things.  [R. at 79].  Plaintiff sleeps eight to nine hours each night.  [R. at 79].  Plaintiff noted that she cooked approximately two days each week, depending upon how her back felt.  [R. at 80]. Plaintiff shops for food about every week to week and one-half.  [R. at 81].  Plaintiff believes it takes her two hours to complete her shopping.  [R. at 81].  Plaintiff noted that she required assistance driving due to her panic attacks.  [R. at 83].  According to forms completed by Plaintiff, she had difficulty completing daily activities and requires quite a bit of assistance. [R. at 87].

On her medications list, Plaintiff noted that she took hydrocodone for back pain, carisopro for back spasms, and fluoxetine for depression and diazepam for anxiety.  [R. at 94].

Plaintiff was born May 19, 1969.  [R. at 51, 162].  Plaintiff is a high school graduate and received her certified nurse's assistant (CNA) certification in 1990. [R. at 183]. Plaintiff's history includes work as a nurse's aide at several different nursing homes. [R. at 67].  In completing a form indicating her responsibilities at her job, Plaintiff wrote that she was responsible for lifting and transferring bed ridden residents, and frequently lifted 50 pounds or more.  [R. at 60].

The record contains several doctors visits by Plaintiff in 2001 and 2002 for complaints of back pain.  Some of the dates of the visits are not decipherable from the submitted records.  [R. at 95 - 99].  Records indicate an L/S sprain between November 20, 2001 and February 5, 2002. [R. at 95-99].

Plaintiff had an initial examination at the Physical Rehabilitation Center of Tulsa on May 7, 2002, by John W. Hallford, D.O.  [R. at 100].  Plaintiff indicated that she was injured while working at Green County Care Center, on February 9, 2002, when she assisted a large client walking down the hall.  Plaintiff was required to grab the client to prevent the client from falling, and Plaintiff injured her back.  [R. at 100, 182].  Plaintiff reported that she had been previously treated by a chiropractor and that her condition had improved before her February 9, 2002, injury. [R. at 100].  Plaintiff reported that she attempted to return to work, but was unable to even though Plaintiff had purchased expensive inserts for her shoes.  [R. at 100].  The doctor noted that Plaintiff was involved in a serious motor vehicle accident approximately twenty years previously, in which Plaintiff had broken her neck and which had left Plaintiff with some neurological abnormalities on her right side, including a circumducting gait pattern favoring her right leg.  [R. at 100].  She has had no previous spinal surgery. [R. at 118].  The doctor's assessment was that Claimant suffered acute lumbrosacral strain/sprain with bilateral lumbar radiculitis, and a herniated nucleus pulposus was ruled out. [R. at 101].  The doctor recommended an MRI to rule out a herniated disc.  Plaintiff was given Lortabs.  Plaintiff was described as temporarily totally disabled due to her lower back injury.  [R. at 101].

Plaintiff visited Dr. David Hicks, M.D., on August 30, 2002.  Plaintiff received the first of three epidural steroid injections.  [R. at 118].  On September 16, 2002, Dr. Hicks

reported that Plaintiff had initially had 90 to 95% relief from her symptoms, but that the symptoms had begun to recur.  Plaintiff wanted to try an additional epidural steroid injection, which the doctor believed appropriate.  [R. at 116].  Dr. Hicks also noted that Plaintiff remained temporarily and totally disabled.  [R. at 117, 118].

Plaintiff received her second epidural steroid injection on October 21, 2002.  The report states that the injection did not help Plaintiff much at all, that Plaintiff wanted to proceed with another injection and that she remained temporarily and totally disabled. [R. at 115].

Plaintiff's third epidural steroid injection was given on November 25, 2002.  The medical report stated that Plaintiff felt better and was not complaining much about back or leg pain.  Dr. Hicks also reported that there was no clear motor, reflex or sensory deficit in either lower extremity.  [R. at 114].  Plaintiff was released to return to work in a full duty capacity on November 25, 2002.  [R. at 113, 114].  Plaintiff was to report back to the doctor in one month for evaluation and a final rating.  [R. at 114].

Plaintiff returned to Dr. Hicks on December 11, 2002, complaining of persistent back pain.  [R. at112].  Plaintiff stated that she was ready to proceed with back surgery.  He noted that a lumbar decompression and fusion at L4-5 and L5-S1 would be appropriate. [R. at 112].

On February 10, 2003, Plaintiff visited Dr. Hicks.  Dr. Hicks noted that Plaintiff had discussed shoe arches with him and that Plaintiff indicated spending $250.00 on supports.[3/] [R. at 110].  The doctor noted that Plaintiff "has a problem, which is painful but not

---

[3/]   This record is probably from 2003; handwritten notations indicated 2003 rather than 2002 for the date. [R. at 110].

dangerous.  Should her symptoms persist to the degree that she wishes to proceed with operative intervention, I would be happy to proceed. . . On the other hand, should her symptoms not be of that magnitude and she wishes to tolerate the symptoms, I think she can do this safely.  She should proceed in a fashion consistent with the intensity of her pain."  [R. at 110].

A Residual Functional Capacity (RFC) Assessment was completed May 7, 2003, by Thurma Fiegel, M.D.  [R. at 126].  The assessment was "affirmed as written" on August 27, 2003, by A. Woodcock, M.D.  [R. at 126].  The primary diagnosis was degenerative disc disease and the second diagnosis was back pain. [R. at 120]. The report stated that Plaintiff can occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand or walk with normal breaks for a total of about six hours in an eight hour workday; sit with normal breaks for about six hours in an eight hour workday; and has no limit for pushing and/or pulling.  [R. at 121].  The report also stated she should limit stooping to an occasional basis.  [R. at 122].

A Psychiatric Review Technique form was completed by Sally Varghese, M.D., on August 27, 2003.  [R. at 127].  The doctor concluded that Plaintiff had no medically determinable impairment.  [R. at 127].  The doctor noted that Plaintiff complained of "stress," but had no hospitalizations or treatment, and that daily activities indicated cooking, cleaning, and shopping.  [R. at 139].

Plaintiff was evaluated by Dr. Karl Detwiler, M.D., on July 2, 2003, for a second opinion regarding possible surgery. [R. at 90, 151].  Dr. Detwiler noted that Plaintiff was awake and alert but had slow mentation.  [R. at 152].  He noted Plaintiff had a slightly reduced intellectual level.  [R. at 152].  Plaintiff's strength was 5/5 at the deltoids,

rhomboids, biceps, triceps, pronator teres, wrist extensors, wrist flexors, and hand intrinsics. [R. at 152]. Plaintiff had no evidence of atrophy or fasiculations in the lower extremities. [R. at 152 ]. Plaintiff's gait was normal. [R. at 153]. Dr. Detwiler concluded that Plaintiff had two-level disc degeneration L4-5, L5-S1, with instability at L4-5. [R. at 153]. The doctor additionally noted that Plaintiff obviously had an ongoing alcohol abuse problem, and that before embarking on neurological treatment a liver profile should be completed. [R. at 153]. While advising Plaintiff that surgery could be the only option that would correct her problem, Dr. Detwiler recommended a cervical spine MRI because Plaintiff had an old injury and the extent of the effect of the old injury was unknown. [R. at 153]. By letter dated July 25, 2003, Dr. Detwiler noted that Plaintiff would be a good surgical candidate if she decided to proceed with surgical intervention. [R. at 148].

Hand written records dated February 20, 2004, indicated Plaintiff was very upset regarding a knot in Plaintiff's left breast and was crying in the office when discussing the situation with the doctor. [R. at 156]. Plaintiff was told not to worry. [R. at 156].

A Physical Medical Source Statement was completed on March 9, 2004, by Thomas A. Derstine, D.O. He indicated that Plaintiff could never lift or carry more than 26 - 50 pounds, and could either never or occasionally lift 21 - 25 pounds. [R. at 145]. Plaintiff could continuously lift five pounds; frequently lift six to ten pounds, and occasionally lift 11 - 20 pounds. [R. at 145]. He noted that Plaintiff could never squat or climb, and should only occasionally crawl or reach. [R. at 146].

The record contains an RFC evaluation by Dr. Brown which is dated May 4, 2004, after the Plaintiff's hearing before the ALJ. The Physical Medical Source Statement indicates that Plaintiff could sit for one hour at a time or one hour total in a day; stand for

one hour at a time or one hour total in a day; walk for one hour at a time or one hour total during an eight hour day.  Plaintiff could lift five pounds continuously, six to ten pounds frequently, 11-20 pounds occasionally, and never lift over 20 pounds.  Plaintiff could carry five pounds frequently, six to ten pounds occasionally, and never carry over 11 pounds.  [R. at 172].  The report also listed that Claimant could never crawl or climb, but could occasionally bend, squat, and reach. [R. at 173].  There was a marked restriction placed on Plaintiff for unprotected heights.  [R. at 173].

Dr. Brown also completed a Mental Medical Source Statement for Plaintiff on May 4, 2004.  [R. at 174].  Plaintiff was noted as having a moderate limitation in the ability to understand and remember detailed instructions, the ability to maintain attention, perform activities within a schedule, sustain an ordinary work routine, work with others, interact with the general public, ask simple questions, respond to supervision, get along with co-workers, and maintain socially appropriate behavior. [R. at 174-75].  Plaintiff had a marked limitation in: 1) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and 2) the ability to respond appropriately to changes in the work setting.  [R. at 175-76].

Plaintiff testified at a hearing before the ALJ on March 9, 2004.  [R. at 178].  Plaintiff testified that she is unable to work due to her pain.  [R. at 185].  According to Plaintiff , the heaviest thing that she lifts is her purse.  [R. at 185].  Plaintiff stated that she walks with a noticeable lift and sometimes drags her foot or trips over it.  [R. at 186].  Plaintiff believes that she can walk approximately one-half of one block.  [R. at 186].  Plaintiff testified that she has to reposition herself frequently while sitting.  [R. at 187].  Plaintiff noted that she

suffers pain in her lower back when she walks.  [R. at 187].  Plaintiff believes she could sit for no longer than thirty minutes before she would have to stand and walk a bit.  [R. at 187].  Plaintiff believes she can stand for about 15 - 20 minutes.  [R. at 188].  According to Plaintiff, she takes up to six muscle relaxers per day to help her pain, but the medication causes her sleepiness, and she naps.  [R. at 188].

According to Plaintiff, she purchased a special bed one month before the hearing and that has assisted her in sleeping better.  [R. at 189].  Plaintiff also sometimes rests in a recliner.  [R. at 189].

Plaintiff testified that she suffers from anxiety.  According to Plaintiff, the symptoms of depression and anxiety began soon after she was injured assisting a patient in the nursing home.  Plaintiff stated that she was put on an antidepressant, for the first time, the day before the hearing.  [R. at 189].  Plaintiff believes that the pain and court proceedings cause her nervousness.  [189-190].  Plaintiff also stated that she was depressed and crying all of the time.  [R. at 190].  Plaintiff also mentioned panic attacks related to when she drove.  [R. at 190].  Plaintiff testified that she did not have a valid drivers' license.  Plaintiff stated that she is unable to drive due to spasms in her leg that were caused by her accident in 1983.  [R. at 193].

Plaintiff testified that she does some of the cooking, but only when she is able. [R. at 191].  Plaintiff's children are four and six years old.  [R. at 191].  Plaintiff is able to put clothes into the washer and sometimes into the dryer.  [R. at 191].  Plaintiff shops with her husband and children.  [R. at 191].

At the time of the hearing before the ALJ, Plaintiff was seeing a chiropractor.  [R. at 193].  Plaintiff testified that the chiropractor helped her with pain.  [R. at 194].

-- 8 --

Plaintiff stated that surgery had been recommended, but she did not want to have surgery because she knew several people who the surgery had not assisted with the pain. Plaintiff testified that she did not want to have surgery if it would not relieve the pain.  [R. at 194].

Plaintiff accepted a settlement of her workers' compensation claim on September 9, 2003.  [R. at 195-95].  No workers' compensation ratings were given because Plaintiff elected against surgery and accepted a settlement.  [R. at 195].

Plaintiff's sister, Ms. Johnson testified at the hearing before the ALJ.  She stated that she had noticed changes in Plaintiff since March 2002 and that Plaintiff appeared to be in a depressed state.  According to Ms. Johnson, Plaintiff cries "all the time."  [R. at 197].  She additionally testified that Plaintiff suffered from panic attacks.  [R. at 197].  Ms. Johnson additionally stated that Plaintiff has difficulty with her memory, and has difficulty expressing herself.  [R. at 197-98].  Plaintiff stated that on the day prior to the hearing, at the grocery store, Plaintiff had lifted a 12-pack of soda and began to cry because her back hurt.  [R. at 198].

The record contains a prescription written by Dr. Jack Brown for a hospital bed to assist Plaintiff in relieving low back pain.  [R. at 144].  The prescription is dated February 6, 2004.  [R. at 144].  Handwritten notes dated February 6, 2004, noted that Plaintiff called the doctor to request a prescription because she had purchased the bed and wanted to receive a discount for it.  [R. at 158].

## II. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims.  *See* 20 C.F.R. § 404.1520.  Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . .

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[4/]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

---

[4/]   Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510 and 404.1572).  Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 1521.  If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled.  If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work.  A claimant is not disabled if the claimant can perform his past work.  If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy.  If a claimant has the RFC to perform an alternate work activity, disability benefits are denied.  *See* <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. *Qualls v. Apfel*, 206 F.3d 1368 (10th Cir. 2000); *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

"The finding of the Secretary[5/] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

---

[5/]   Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

### III.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift or carry ten pounds occasionally; ten pounds frequently; stand or walk two hours in an eight hour day and sit six hours in an eight hour day.  Plaintiff was unable to stoop or use foot controls.  [R. at 20].  The ALJ noted Plaintiff could communicate with co-workers and supervisors but could not communicate with the general public.  [R. at 20].  Based on the testimony of a vocational expert the ALJ concluded that Plaintiff was not disabled.

### IV.  REVIEW

#### CREDIBILITY AND PAIN EVALUATION

Plaintiff testified that she suffers from continuing and debilitating pain.  The medical evidence in the record indicates Plaintiff has at least some impairments in her back and surgery has been recommended.  When a claimant has a medically diagnosed impairment that can produce pain about which the claimant complains, the ALJ is required to evaluate the claimant's credibility.

The legal standards for evaluating pain are outlined in 20 C.F.R. §§ 404.1529 and 416.929, and were addressed by the Tenth Circuit Court of Appeals in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).  First, the asserted pain-producing impairment must be supported by objective medical evidence.  *Id.* at 163.  Second, assuming all the allegations of pain as true, a claimant must establish a nexus between the impairment and the alleged pain.  "The impairment or abnormality must be one which 'could reasonably be expected to produce' the alleged pain."  *Id.*  Third, the decision maker, considering all of the medical

data presented and any objective or subjective indications of the pain, must assess the claimant's credibility.

> [I]f an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence.

*Id.* at 164.

In this case, the ALJ appears to have proceeded past step one and step two of *Luna*, because the ALJ addressed Plaintiff's crediblity.  The ALJ summarizes Plaintiff's medical record, noting Plaintiff's back injury, diagnoses of spoldylolisthesis and degenerative disc disease, and recommendations for surgery.  The ALJ does not specifically address step two of *Luna*.  Plaintiff's medical records and Plaintiff's doctors appear to recognize that some degree of pain could be caused by Plaintiff's impairments.  Assuming steps one and two of *Luna* are met, the ALJ assesses Plaintiff's credibility at "step three" of *Luna*.

In assessing the credibility of a claimant's complaints of pain, the following factors may be considered.

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991).  *See also Luna*, 834 F.2d at 165 ("For example, we have noted a claimant's persistent attempts to find relief for his pain and his willingness to try any treatment prescribed, regular use of crutches or a cane, regular

contact with a doctor, and the possibility that psychological disorders combine with physical problems.  The Secretary has also noted several factors for consideration including the claimant's daily activities, and the dosage, effectiveness, and side effects of medication."). In *Kepler v. Chater*, 68 F.3d 387, (10th Cir. 1995), the Tenth Circuit determined that an ALJ must discuss a Plaintiff's complaints of pain, in accordance with *Luna*, and provide the reasoning which supports the decision as opposed to mere conclusions.  *Id.* at 390-91.

> Though the ALJ listed some of these [*Luna*] factors, he did not explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible.

*Id.* at 391.  The Court specifically noted that the ALJ should consider such factors as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 391.  The Tenth Circuit remanded *Kepler*, requiring the Secretary to make "express findings in accordance with *Luna*, with reference to relevant evidence as appropriate, concerning claimant's claim of disabling pain."  *Id.*

In this case, the ALJ's credibility analysis is lacking.  Initially, the ALJ merely states, without citing to any evidence in the record or any examples or testimony, that Plaintiff's "testimony was evaluated and compared with prior statements and other evidence.  It is the conclusion of the Administrative Law Judge that the pain and fatigue experienced by the claimant is limiting, but when compared with the total evidence, not severe enough to preclude all types of work."  [R. at 21].  None of the ALJ's discussion provides any basis

for the ALJ's conclusion or provides any insight into the ALJ's analysis.   The ALJ additionally notes:

> After giving due consideration to credibility, motivation, and the medical evidence, the Administrative Law Judge is persuaded that this claimant exaggerates her symptoms to include disabling pain.  She apparently bought herself a hospital bed and then asked Dr. Brown for a prescription to get a discount. The severity of the claimant's symptoms is disproportionate in comparison to the usual expected severity of his [sic] condition. therefore, the alleged effect of the claimant's symptoms on activities of daily living and basic task performance is not consistent with the total medical and non-medical evidence in the file.  The physical findings and supporting clinical data do not closely corroborate or correlate with the claimant's subjective complaints.

[R. at 21].  The vast majority of the ALJ's "discussion" of Plaintiff's credibility is conclusory and "boilerplate" and is not tied to any specifics with regard to this Plaintiff.  In fact, in one sentence, the ALJ refers to the Plaintiff as "his" rather than her.  The only specific reference is to a hospital bed which the Plaintiff purchased in an effort to reduce her back pain.  The ALJ seems to suggest that the purchase of the bed and a later request to Dr. Brown for a prescription to obtain a discount in some way diminishes the Plaintiff's credibility.[6/]  This assumption, standing alone, needs more explanation.  An opposite conclusion – that is, that Plaintiff's pain was so bad that she used her own funds to purchase an expensive hospital bed without knowing whether or not she could receive a discount – is just as easy to reach. Standing alone, this reason, as virtually the sole reason for the ALJ's discounting of Plaintiff's credibility is insufficient.

---

[6/]    The fact that the prescription did not precede the purchase of the hospital bed could undermine an argument related to the medical necessity of the hospital bed.  More development of this argument is needed, however, for an understanding as to how it impacts Plaintiff's credibility.

In addition, the ALJ never makes an effort to discuss the factors that have been outlined, numerous times, by the Tenth Circuit Court of Appeals in both *Luna* and *Kepler*. At the very least, the ALJ should discuss Plaintiff's medication and their effectiveness (prescriptions of Lortab or hydrocodone), the extensiveness of the attempts (medical or nonmedical) to obtain relief and the frequency of medical contacts (for example Plaintiff saw one doctor the day prior to Plaintiff's hearing before the ALJ), the nature of daily activities (Plaintiff does some cooking and caring for her family), subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses (Plaintiff's sister testified), and the consistency or compatibility of nonmedical testimony with objective medical evidence. The ALJ devotes none of his credibility analysis to the factors that the Tenth Circuit has repeatedly emphasized should be considered.

The mere existence of pain is insufficient to support a finding of disability. The pain must be considered "disabling." *Gosset v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) ("Disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment."). Credibility determinations in particular lie in the domain of the finder of fact. *See McGoffin v. Barnhart*, 288 F.2d 1248, 1254 (10th Cir. 2002); *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495 (10th Cir. 1992). An ALJ's finding with regard to credibility is afforded great deference.

> The ALJ enjoys an institutional advantage in making the type of determination at issue here. Not only does an ALJ see far more social security cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated

> fashion. As a result, the ALJ's credibility findings warrant particular deference.

*White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002). On appeal, the court's role is to verify whether substantial evidence in the record supports the ALJ's decision, and not to substitute the court's judgment for that of the ALJ.

In this case, where the ALJ primarily parrots only boilerplate language, fails to link any of his conclusory statements to the record or medical evidence, and provides as the sole "unique" reason a conclusion which remains unexplained and subject to more than one interpretation, the Court cannot find that the credibility conclusions were supported by substantial evidence. This alone requires reversal of the decision of the ALJ.

## MENTAL IMPAIRMENT

Plaintiff additionally asserts that the ALJ erred in failing to consider later evidence in the record supporting Plaintiff's allegations of depression and a severe mental impairment.

The ALJ discussed Plaintiff's alleged depression, but found that such allegations did not rise to the level of a "severe" impairment. The ALJ discounted Plaintiff's mental impairment at Step Two of the sequential evaluation and did not further evaluate Plaintiff's depression or anxiety or its effect on Plaintiff's pain, credibility, or asserted impairments.

The Step Two burden placed on Plaintiff is *de minimis*. *Williams*, 844 F.2d at 751. The Commissioner's own regulations state that

> [g]reat care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end

with the not severe evaluation step.  Rather, it should be continued.

Social Security Ruling 85-28 (1985).  But, more importantly, Step two "is an administrative convenience [used] to screen out claims that are 'totally groundless' solely from a medical standpoint."  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (*per curiam*) (*quoting Farris v. Secretary of HHS*, 773 F.2d 85, 89 n. 1 (6th Cir. 1985)).  In other words, if an ALJ decides that Plaintiff has any "severe" impairment, then the ALJ proceeds past Step Two in evaluating Plaintiff's ability to perform work.  At the remaining steps of the sequential evaluation, all of Plaintiff's asserted impairments, whether or not severe, should be considered.

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairment could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404.1523 (emphasis added).  *See also Railey v. Apfel*, 134 F.3d 383 (10th Cir. 1998); Soc. Sec. Rul. 96-8p (July 2, 1996) (ALJ must consider both severe and nonsevere impairments when assessing RFC).

On remand, the ALJ should consider Plaintiff's asserted impairments in accordance with the Social Security regulations.

Dated this 23rd day of September 2005.

Sam A. Joyner
United States Magistrate Judge

-- 18 --